**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MARGARET RUDIN,
*Petitioner-Appellant*,

v.

CAROLYN MYLES; ATTORNEY
GENERAL OF THE STATE OF NEVADA,
*Respondents-Appellees*.

No. 12-15362

D.C. No.
2:11-cv-00643-
RLH-GWF

OPINION

Appeal from the United States District Court
for the District of Nevada
Roger L. Hunt, Senior District Judge, Presiding

Argued and Submitted
February 11, 2014—San Francisco, California

Filed September 10, 2014

Before: Diarmuid F. O'Scannlain and Mary H. Murguia,
Circuit Judges, and Lynn S. Adelman, District Judge.[*]

Opinion by Judge Murguia;
Dissent by Judge Adelman

---

[*] The Honorable Lynn S. Adelman, United States District Judge for the Eastern District of Wisconsin, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel affirmed the district court's order dismissing as untimely Nevada state prisoner Margaret Rudin's 28 U.S.C. § 2254 habeas corpus petition challenging her conviction of murder with the deadly use of a weapon and unauthorized surreptitious intrusion of privacy by listening device.

The panel held that because the Nevada State Supreme Court concluded that Rudin's state post-conviction petition was untimely under state law, Rudin is not entitled to statutory tolling under 18 U.S.C. § 2244(d)(2) for the duration of her state post-conviction proceedings.

The panel held that extraordinary circumstances prevented Rudin from filing her application for federal habeas relief, and that she is therefore entitled to equitable tolling of the AEDPA statute of limitations, between November 10, 2004, and August 22, 2007—during which period the first attorney appointed to represent Rudin in collateral review proceedings abandoned her, and during which period she was diligent in pursuing her rights.

The panel held that Rudin is not entitled to equitable tolling after the point, August 22, 2007, at which the parties and her subsequent appointed counsel first became aware that prior counsel had never filed a post-conviction petition in state court, through April 25, 2011, when counsel applied for

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

habeas relief in federal court, during which period Rudin failed to act diligently to protect her rights.

Dissenting, District Judge Adelman concluded that, on the egregious facts of this case, the doctrine of equitable tolling is sufficiently expansive to provide Rudin with access to the federal courts.

## COUNSEL

Christopher Oram, Las Vegas, Nevada, for Petitioner-Appellant.

Jamie J. Resch (argued), Senior Deputy Attorney General, and Catherine Cortez Masto, Attorney General, Office of the Attorney General, Las Vegas, Nevada, for Respondents-Appellees.

## OPINION

MURGUIA, Circuit Judge:

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one-year period of limitation within which an individual seeking relief must file an application for a writ of habeas corpus. *See* 28 U.S.C. § 2244(d)(1). Once that one-year period begins to run, it may be tolled only in certain circumstances. *See id.* § 2244(d)(2) (providing for statutory tolling); *Holland v. Florida*, 130 S. Ct. 2549, 2554 (2010) (providing for equitable tolling). The question this case presents is whether Petitioner Margaret Rudin is entitled to statutory or equitable tolling of the

AEDPA limitations period, excusing her six-year delay in filing her application. We conclude, albeit not without pause, that she is not entitled to statutory or equitable tolling sufficient to excuse her delay. We therefore affirm the district court's order dismissing Rudin's application as untimely.

## I. FACTS

The facts giving rise to this appeal are essential to our tolling analysis. We therefore describe those facts in more detail than we otherwise might.

### A. Rudin's Criminal Trial and Direct Appeal Proceedings

In April 1997, Petitioner Margaret Rudin was charged with murder with the use of a deadly weapon and unauthorized surreptitious intrusion of privacy by listening device, both in violation of Nevada state law. *See* Nev. Rev. Stat. §§ 200.010; 193.165; 200.650. Those charges arose out of the death of Rudin's husband Ron, whose charred remains had been discovered in Lake Mojave a few years earlier. *See Rudin v. State*, 86 P.3d 572, 577 (Nev. 2004). After pleading not guilty to both charges, Rudin retained the services of a private attorney, Michael Amador, to represent her at trial. Her trial began in the Eighth Judicial District Court of the State of Nevada (the "trial court" or the "court") on March 2, 2001.

Two-and-a-half weeks before trial commenced, it became clear to the court that Amador alone could not adequately defend Rudin. After a series of pretrial delays, the court appointed attorney Thomas Pitaro to assist Amador with Rudin's defense. Pitaro quickly realized that Amador had not

yet reviewed "thousands of pages of discovery," and Pitaro soon became "concerned about the preparation that had been done for the trial." Amador had not, for example, interviewed critical witnesses. As a result, the defense team would learn, for the first time at trial, the content of various witnesses' testimony. In at least one instance, when a witness was called to the stand, Pitaro "went to get from Mr. Amador the [witness's] file and found nothing inside." As Pitaro would later describe, "the preparation that [one] would hope normally would be done before trial starts was being done during the trial."

But even with Pitaro's help, Rudin's trial was replete with alleged errors and professional misconduct on the part of the defense team. Amador, for example, began with an opening statement that had "no cohesive theme." Over the course of trial, Amador was accused of creating a prejudicial conflict of interest by allegedly negotiating agreements for the literary and media rights to his representation. *Rudin*, 86 P.3d at 587–88. His general lack of preparation prompted Rudin twice to move for a mistrial, but both of her motions were denied. *Id.* at 579–80, 585–86. Pitaro, who was appointed after Amador's opening statement, described the representation as " 'a farce, and that disturbs me as an attorney. . . . This has become a sham, a farce and a mockery.' "[1] *Id.* at 590 (Rose, J., dissenting).

A jury convicted Rudin on both charges. For her conviction for murder with the use of a deadly weapon, the trial court imposed a sentence of life imprisonment with a

---

[1] By the time Rudin's trial ended, the court had actually appointed a third attorney, John Momot, to assist with the defense. *Rudin*, 86 P.3d at 580.

possibility of parole after twenty years. For her conviction for unauthorized surreptitious intrusion of privacy by a listening device, the court imposed a one-year sentence, to run concurrently with Rudin's life sentence. Rudin's judgment of conviction was entered on September 17, 2001.

On April 1, 2004, the Nevada Supreme Court affirmed both of Rudin's convictions on direct appeal. *See Rudin v. State*, 86 P.3d 572 (Nev. 2004). The court concluded that Amador's alleged conflict of interest and ineffectiveness, while sufficient to cause "concern," "must be examined in a separate post-conviction proceeding at which time Rudin's post-conviction attorney will examine the entire record, interview all relevant witnesses and present the matter to the district court for a full and complete airing and decision." *Id.* at 588.[2] The Nevada Supreme Court's remittitur issued on April 27, 2004, and Rudin did not seek a writ of certiorari from the U.S. Supreme Court. The deadline for her to do so was June 30, 2004.[3]

---

[2] Two of the six justices dissented. They concluded that

> there is sufficient evidence in the record, without the necessity of post-trial proceedings, to establish that the defense was totally unprepared to try this case and that Amador had a substantial conflict of interest with his client. This was prejudicial to Rudin, and the result reached was unreliable.

*Rudin*, 86 P.3d at 595 (Rose, J., dissenting).

[3] Rudin had ninety days from the date of the Nevada Supreme Court's decision, which was issued on April 1, 2004, to petition for a writ of certiorari. Sup. Ct. R. 13(3).

*B. Rudin's Petitions for Collateral Relief*

Around the time that appellate review of Rudin's judgment of conviction concluded, two statutes of limitation began to run, both relating to her ability to seek collateral review of the errors that she alleged had affected her underlying criminal trial. The first limitations period is defined by state law and requires, except under certain circumstances, that a state-court petition for post-conviction relief be filed within one year of the Nevada Supreme Court issuing its remittitur:

> Unless there is good cause shown for delay, a petition that challenges the validity of a judgment or sentence must be filed within 1 year after entry of the judgment of conviction or, if an appeal has been taken from the judgment, within 1 year after the Supreme Court issues its remittitur. For the purposes of this subsection, good cause for delay exists if the petitioner demonstrates to the satisfaction of the court:
>
> (a) That the delay is not the fault of the petitioner; and
>
> (b) That dismissal of the petition as untimely will unduly prejudice the petitioner.

Nev. Rev. Stat. § 34.726(1). The second limitations period is defined by AEDPA, and it also establishes a one-year deadline for a state prisoner seeking a federal writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The AEDPA limitations period runs from the latest of four specified dates:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* The AEDPA limitations period may be tolled if a petitioner "properly file[s]" a petition for post-conviction relief in state court; where that occurs, the limitations period

will be tolled for the time during which the state-court petition is pending. *Id.* § 2244(d)(2).

Thus, from the date on which the Nevada Supreme Court issued its remittitur, which was April 27, 2004, Rudin had one year, or until April 27, 2005, to file a petition for post-conviction relief in state court. And from the date on which the deadline passed for seeking a writ of certiorari from the U.S. Supreme Court, which was June 30, 2004, she had one year, or until June 30, 2005, to file an application for a writ of habeas corpus in federal court. If Rudin were "properly" to file her state post-conviction petition, the time for filing an application for federal habeas relief would be statutorily tolled.

With that statutory background in mind, we turn to the series of events that occurred during each of those respective one-year periods in this case.

### 1. Attorney Dayvid Figler's Representation

On April 30, 2004, three days after the Nevada Supreme Court issued its remittitur on direct appeal of Rudin's judgment of conviction, Rudin's appellate counsel, Craig Creel, moved to withdraw as counsel and asked the trial court to appoint post-conviction counsel. The trial court granted Creel's motion on June 8, 2004. Rudin, proceeding pro per, filed a similar motion on July 14, 2004, also seeking appointment of post-conviction counsel.[4] At a hearing on

---

[4] We assume that the state court was required, under Nevada Rule of Appellate Procedure 46(d)(3)(C), to wait to set a hearing date until after Rudin had filed her pro per motion for appointment of post-conviction counsel. Under that rule, in a post-conviction appeal, an attorney's motion

November 10, 2004, after 197 days had passed since the state supreme court issued its remittitur, the court granted Rudin's motion and appointed attorney Dayvid Figler to represent her.[5] Two weeks later, on November 24, 2004, the court issued an order to that effect.[6]

At the November 2004 hearing at which the state court appointed Figler to represent Rudin, Rudin attempted pro per to file with the court a series of papers. In the district court and on appeal, Rudin contends that those papers would have constituted a "properly filed" post-conviction petition had the court accepted them. *See* 28 U.S.C. § 2244(d)(2).[7] Pursuant to the applicable local rules, however, the court declined to

to withdraw as counsel "shall be accompanied by . . . a motion by defendant to proceed in proper person or with substitute counsel."

[5] The record is not clear as to the reason, if any, that the post-conviction court delayed four months in hearing Rudin's pro per motion for appointment of post-conviction counsel. *Cf.* Nev. Rev. Stat. §§ 34.740 (requiring "expeditious judicial examination" of petitions for post-conviction relief); 34.726 (limiting the period for filing a petition to one year). In the district court, Rudin argued in passing that the state court's four-month delay was "unnecessarily long" and was a part of the "extraordinary circumstances" that gave rise to her filing delay. She does not renew that argument on appeal.

[6] We, like the district court, give Rudin every benefit of the doubt. We therefore take November 10, 2004, not November 24, 2004, as the date on which Figler's representation commenced.

[7] We give Rudin every benefit of the doubt and assume her contention is accurate.

accept them and instead "turned [them] over to Mr. Figler."[8] But Figler never filed them with the court. One month later, in December 2004, Judge Bonaventure, who had presided over Rudin's trial and post-conviction proceedings up until that point, recused himself sua sponte, and Rudin's case was reassigned.[9]

When Rudin's case was reassigned to another judge on December 29, 2004, 246 days had passed since the Nevada Supreme Court issued its remittitur. Rudin therefore had 119 days left to file a petition for post-conviction relief in state court. With respect to AEDPA, 182 days had passed since that limitations period had begun to run, leaving Rudin with 183 days to file an application for federal habeas relief. Again, the deadlines for filing those petitions were April 27, 2005, and June 30, 2005, respectively. And although Rudin had once tried to file a petition for relief herself, the post-conviction court rejected that effort because the local rules prohibited Rudin from doing so when she had "counsel of record."

---

[8] Rule 3.70 of the Rules of Practice for the Eighth Judicial District Court of the State of Nevada provides that papers "delivered to the clerk of the court by a defendant who has counsel of record will not be filed [but will be] forwarded to that attorney for such consideration as counsel deems appropriate."

[9] Judge Bonaventure recused himself as a result of personal biases that he had against Rudin's previous appellate counsel, Craig Creel. *See* Matt Pordum, *Bonaventure Won't Hear Rudin Appeal*, Las Vegas Sun, Dec. 28, 2004, http://www.lasvegassun.com/news/2004/dec/28/bonaventure-wont-hear-rudin-appeal/ (" 'My blood boils every time I hear the name Craig Creel. . . . Whether I look at him or think of him, my blood boils. I'm getting a headache thinking of him right now.' " (quoting Bonaventure, J.)).

\*     \*     \*     \*     \*

The record suggests that, after Rudin's case was reassigned (and perhaps as a result of that reassignment), substantial confusion arose between the parties and the court about whether Rudin had already filed a petition for post-conviction relief. On January 5, 2005, for example, the state court held a status hearing on Rudin's "opening brief." The court's use of the term "opening brief" suggested that the parties and the court believed that Rudin's initial petition for post-conviction relief had been filed but that Rudin had yet to file a brief in support of that petition. *See* Nev. Rev. Stat. § 34.735 (establishing the form of a petition). At the same status hearing, the court granted Figler a continuance, extending his time to file the "brief" and setting a second status hearing for July 13, 2005. At the July 13 status hearing, Figler again requested "an additional 90 days to file his brief," which the court granted the following week. By that date, both of Petitioner's one-year limitations periods for filing her requests for collateral relief had run. But nobody–neither Figler, nor the State, nor the court–recognized that to have occurred. On January 18, 2006, the post-conviction court again granted Figler an additional "45 days in which to file his opening brief due to the voluminous record in this case." The State would later confirm that, at that time, the State and the court were "under the mistaken impression" that a petition had already been filed.

Meanwhile, Rudin became concerned–and we believe rightfully so–that Figler was not adequately representing her in her collateral review proceedings. According to Rudin, at some point in 2005, she requested that Figler provide her with copies of her file. Figler did not immediately respond. Figler visited Rudin only a handful of times that year, but he did not

interview the witnesses she identified, and he never informed her that he had requested a series of continuances on the basis of the "complexity" of her case. Figler last visited Rudin in May 2006, which was the first time in almost a year that he had done so.

In November 2005, Rudin began to gather information in support of her soon-to-be-filed motion to substitute counsel. First, she submitted an Inmate Request Form to the prison staff asking for a summary of the attorney visits she had received that past year. In a response dated a few weeks later, the staff informed her that she had received four visits, occurring on January 4, February 7, February 25, and June 17. In January 2006, after multiple failed attempts to contact Figler, Rudin submitted a second Inmate Request Form notifying prison staff that she had "not been able to call [her] attorney since [December 15, 2005]" and requesting that the staff fix the problem, which she was concerned was "at this facility." Three weeks later, the prison staff responded, informing Rudin that Figler had a collect call block on his office phone and that Rudin would need to send a letter to Figler requesting that the block be removed. At the same time, Rudin's friend, who was not in prison, "repeatedly . . . requested [that Figler] visit [Rudin]; have the telephone block removed; not postpone [Rudin's] post conviction brief filing; and send her a copy of the opening brief," all to no avail.

Figler never filed anything with the state post-conviction court. On April 5, 2006, 511 days after Figler was appointed, Rudin moved to substitute counsel. In her motion, she described Figler's inadequacies and expressed her "grea[t] concer[n] that she [was] not receiving adequate representation regarding her post conviction." At a hearing on July 17, 2006, the court granted her motion and, at the same time,

appointed attorney Christopher Oram, who continues to represent Rudin on appeal, to represent her.[10]  The court filed an order to that effect on August 17, 2006.

To summarize the facts leading up to this point: By August 17, 2006, the day that Figler was relieved from his duties to represent Rudin, almost two years had passed since the day he was appointed to represent her.  Early on in the course of Figler's representation, Rudin's case was reassigned to a new judge, who granted at least three of Figler's requests for additional time to file an "opening brief."  At no point did the court ever mention the one-year limitations period under Nevada state law, and at no point did the State raise timeliness concerns.  And while Figler regularly attended the court's status hearings, he appears to have done nothing else in support of his client's request for post-conviction relief.  Indeed, after June 2005, Figler stopped communicating with his client altogether, by declining to visit her in prison and by placing a collect call block on his office telephone.  When Figler's representation ended, 842 days had passed since the day Rudin's one-year state limitations period began to run, and 778 days had passed since the day her one-year AEDPA limitations period began to run.  Of those days, 645 and 581, respectively, had run under Figler's watch.  And during that time, Figler had filed nothing in either state or federal court.

---

[10] Attached to Petitioner's motion to substitute counsel was what she called a "brief opening supplement," presumably to her petition for post-conviction relief.  When the post-conviction court ruled on her motion, however, it appears to have construed the filing solely as a motion to substitute counsel, not as a petition for post-conviction relief.

### 2. *Attorney Christopher Oram's Representation*

Oram's representation began on August 17, 2006,[11] and has continued through the course of this appeal. Oram finally filed a post-conviction petition in state court on August 21, 2007. Prior submissions or references to Rudin's "opening brief" notwithstanding, Oram's August 21, 2007, submission appears to have been the first and only petition for post-conviction relief filed in the state court. It was filed three years and 116 days after the state-law statute of limitations began to run–or 846 days too late.

A colloquy between Oram, the post-conviction court, and the State at a status conference on August 22, 2007, demonstrates that, even at that late date, the parties were still confused as to whether a petition for post-conviction relief had actually been filed. Oram initially raised the issue by suggesting that he re-label his most recent filing as a petition for "a writ of habeas corpus" as opposed to a "supplement." The post-conviction court agreed and proceeded to find "extraordinary circumstances" to excuse the delay in filing:[12]

> MR. ORAM: [M]y fear is, as I look at the statute, that – um – the one year deadline to

---

[11] Oram technically was appointed at the hearing that took place on July 17, 2006. Again, however, we seek to give Rudin every benefit of the doubt. We therefore consider Figler's representation to have extended until the date on which the court entered its order substituting counsel, which was August 17, 2006.

[12] We assume that the post-conviction court's reference to "extraordinary circumstances" is equivalent to, or was intended to mean, "good cause," which is the standard to excuse a filing delay under Nevada Revised Statute section 34.726.

file, I looked at it and it said that – uh – the court can excuse it, and can delay the process, which I assume was going on while Mr. Figler was going through this.  But perhaps I should relabel the petition for writ of habeas corpus. I may need to amend it today, just to say where she's located, because that's what the statute requires.

THE COURT:     Okay.  I  may  say you should probably do that.  Just do that as like a one page sheet, like an errata to your deal.

MR. ORAM:  Yes.

THE COURT:     And the court will find, as a matter of finding today, that [your] filing of the writ for post-conviction relief is timely, based upon – um – the fact that – uh – Mr. Figler had the case for so many years.  I believe it was years.

MR. ORAM:  It was two years.  Yes, it was two years.

THE COURT:     It was two years, and filed nothing, even though we kept having status checks.  So – um – we're going to find that it was timely filed.

. . . .

Um – and it was an extensive trial.  Didn't it take several weeks?

MR. ORAM:   Ten weeks.

. . . .

THE COURT:    Ten week trial.   So that
would be the extraordinary circumstance that
we would find would allow the petition for
post-conviction relief be filed.   That, plus the
fact that the first attorney didn't do anything.

At that point, and for the very first time in two years, the
State became aware that no petition had been filed and
decided to speak up:

[THE STATE]:    I think, Judge, that sets a
bad precedent, in light of the fact that we can
get multiple attorneys, and every attorney that
gets this says, well, he had it too long, he had
it too long.   We'd like to at least address that,
before you make that finding.

The post-conviction court obliged, declining to make a
finding until the State had the opportunity to address the issue
in further briefing.   It noted, however, that "I really think that
the court is going to find, not only this court, but the next
court, is going to find that there were extraordinary
circumstances in this case, which would allow the court to
extend the one year deadline."   The State never did brief the
timeliness question, nor did it ever move to dismiss Rudin's
petition.

On December 19, 2008, the post-conviction court held a
hearing to consider the merits of Rudin's petition for relief.
At that hearing, the court questioned whether "the defense . . .

start[ed] out so far behind the starting line of this trial that no matter how much time the [c]ourt gave them during the trial . . . it ultimately [was] an unfair trial."  The post-conviction court went on to state,

> And there's two standards for *Strickland*:[13] One is was counsel effective, and then the second standard is even if counsel wasn't effective was the evidence so overwhelming . . . against the defendant [that] it wouldn't make any difference who defended her and how prepared they were and how many experts they called because the decision would always be guilty of murder.
>
> In this case I can't say that that is true.  I didn't try the case, but in reviewing the writ filed by Mr. Oram and reviewing the response by the State, and I had commented on the 22nd of October that the case was full of a cast of characters together with witnesses, and the case had a lot of intrigue and spins and loops, and there was a lot of ulterior motives on people who testified.
>
>          . . . .
>
> The experts couldn't agree on much of anything in this case as I read the dry record. The proof of guilt was not a slam dunk by any stretch of the imagination for the State, so I can't say – I cannot say in this case that no

---

[13] *Strickland v. Washington*, 466 U.S. 668 (1984).

matter who had defended her that the verdict would have been the same.

After hearing testimony from defense attorneys Pitaro and Momot, the court granted Rudin's request for post-conviction relief and ordered her a new trial. The post-conviction court described Rudin's prior trial as a "mockery of our promise to people who are in the criminal justice system that they will have an adequate defense."

The State appealed, arguing for the first time on appeal that Rudin's petition was untimely. In its brief, the State confirmed what we think is suggested by the record: that "in the proceedings below," "the prosecution and the judge were under the mistaken impression that an initial petition had been timely filed."

The Nevada Supreme Court reversed the post-conviction court's judgment. It concluded that neither of that court's stated reasons for excusing Rudin's delay "affords a factual or legal basis to find that Rudin's claims were not reasonably available to be raised in a timely manner." Rudin sought en banc reconsideration, which the Nevada Supreme Court denied on January 20, 2011. It was only after the Nevada Supreme Court denied en banc reconsideration of Rudin's state post-conviction appeal that Oram filed an application for habeas relief in federal court.

\* \* \* \* \*

On April 25, 2011, Rudin, still represented by Oram, applied for habeas relief in federal court. By that time, almost seven years had passed since the deadline for seeking a writ of certiorari from the U.S. Supreme Court, *see*

28 U.S.C. § 2244(d)(1)(A), making her application almost six years too late under AEDPA. In her application, Rudin contended that the Nevada Supreme Court erred in finding her state-court petition for post-conviction relief time-barred because either (1) the petition was timely, or (2) the State had waived any argument to the contrary when it failed to make a timeliness argument before taking its appeal. For those reasons, according to Rudin, the federal district court should have considered her state-court petition to be "properly filed" and given her the benefit of statutory tolling of the AEDPA limitations period. *See* 28 U.S.C. § 2244(d)(2). In the alternative, Rudin argued that equitable tolling pursuant to *Holland v. Florida*, 130 S. Ct. 2549 (2010), also applied to her case. The district court granted the State's motion to dismiss, dismissed Rudin's petition with prejudice, and denied the certificate of appealability. On October 24, 2012, we granted Rudin's request for a certificate of appealability on the question "whether the district court properly determined that the petition was barred by the statute of limitations." We turn now to that question.

## II.  DISCUSSION

We review de novo the question whether a petitioner's application for federal habeas relief was timely filed. *Noble v. Adams*, 676 F.3d 1180, 1181 (9th Cir. 2012). We also review de novo the question whether AEDPA's statute of limitations should be tolled. *See Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). Unless the facts are undisputed, we review the district court's findings of fact underlying a claim for equitable tolling for clear error. *Stancle v. Clay*, 692 F.3d 948, 953 (9th Cir. 2012). The petitioner bears the burden to establish that she is entitled to tolling of the AEDPA limitations period. *Id.*

*A. Statutory Tolling*

We begin with Rudin's argument that she is entitled to statutory tolling of the AEDPA limitations period. On this point, Rudin appears to argue that the Nevada Supreme Court erred when it found her state post-conviction petition untimely, and that had it not so erred, her petition would be considered "properly filed" under 28 U.S.C. § 2244(d)(2), entitling her to statutory tolling of the AEDPA limitations period.

While we may not have made the same decision as the Nevada Supreme Court, we are not at liberty to second guess that court's decision when it was acting on direct appeal of the state post-conviction court's judgment. The state supreme court concluded that Rudin's petition was untimely under state law, and "[w]hen a postconviction petition is untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (internal quotation marks omitted) (second alteration in original); *accord Zepeda v. Walker*, 581 F.3d 1013, 1018 (9th Cir. 2009). In light of *Pace*, and because the Nevada Supreme Court is the final arbiter of Nevada state law, that is the end of the matter here. Rudin is not entitled to statutory tolling under § 2244(d)(2) for the duration of her state post-conviction proceedings.[14]

---

[14] We likewise reject Rudin's argument that she can claim the benefit of equitable tolling in state court, thereby entitling her to statutory tolling in federal court. Equitable tolling under *Holland v. Florida* is a federal doctrine entirely separate from state law. *See* 130 S. Ct. at 2563 ("Equitable tolling [is] an inquiry that does not implicate a state court's interpretation of state law."); *see also Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (applying the independent and adequate state ground doctrine to the habeas context).

## B. Equitable Tolling

We turn, therefore, to Rudin's argument that she is entitled to equitable tolling under *Holland v. Florida*. A petitioner is entitled to equitable tolling if she can establish that (1) she was pursuing her rights diligently, but (2) some extraordinary circumstance stood in her way. *Pace*, 544 U.S. at 418; *Sossa v. Diaz*, 729 F.3d 1225, 1229 (9th Cir. 2013) ("[E]quitable tolling is available 'only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time and the extraordinary circumstances were the cause of [the prisoner's] untimeliness.' " (quoting *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010) (second alteration in original))). Rudin bears a heavy burden to show that she is entitled to equitable tolling, "lest the exceptions swallow the rule," *Bills*, 628 F.3d at 1097 (internal quotation marks omitted); however, the grounds for granting equitable tolling are also highly fact-dependent, *Sossa*, 729 F.3d at 1229. At bottom, the purpose of equitable tolling is to "soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having [her] day in court." *United States v. Buckles*, 647 F.3d 883, 891 (9th Cir. 2011) (internal quotation marks omitted); *see also Holland*, 130 S. Ct. at 2563 ("[W]e have followed a tradition in which courts of equity have sought to 'relieve hardships which, from time to time, arise from a hard and fast adherence' to more absolute legal rules, which, if strictly applied, threaten the 'evils of archaic rigidity.' " (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248 (1944))).

In *Holland*, the Supreme Court held that AEDPA's limitations period may be tolled for equitable reasons. 130 S. Ct. at 2562. In that case, the petitioner's attorney had failed

to file a timely application despite the petitioner's repeated requests to do so, failed to inform the petitioner about crucial facts related to his case, and failed to communicate altogether with his client over a period of several years. *Id.* at 2564. The Supreme Court found those circumstances to constitute more than a "garden variety claim of excusable neglect," and instead concluded that the attorney's egregious misconduct amounted to, in essence, abandonment. *Id.*; *id.* at 2568 (Alito, J., concurring); *see also Maples v. Thomas*, 132 S. Ct. 912, 923–24 (2012) (adopting Justice Alito's reasoning in *Holland* addressing attorney abandonment).[15] Because of that abandonment, the petitioner's delay could be deemed to result from misconduct that could not constructively be attributed to him, and therefore the AEDPA limitations period could potentially be tolled for the relevant period of time. *Holland*, 130 S. Ct. at 2564–65.

To be entitled to equitable tolling of the AEDPA limitations period, Rudin thus bears the burden to prove that she has been pursuing her rights diligently but that extraordinary circumstances made it impossible for her to file her application on time. *See Pace*, 544 U.S. at 418. Under *Holland*, attorney abandonment may give rise to such extraordinary circumstances. 130 S. Ct. at 2564. "The diligence required for equitable tolling purposes is

---

[15] Mere negligence on the part of a prisoner's post-conviction counsel does not warrant equitable tolling. *Holland*, 130 S. Ct. at 2564. "That is so . . . because the attorney is the prisoner's agent, and under 'well-settled principles of agency law,' the principal bears the risk of negligent conduct on the part of his agent." *Maples*, 132 S. Ct. at 922 (quoting *Coleman*, 501 U.S. at 753–54). But when an attorney abandons his client, the principal-agent relationship is severed, and the attorney's "acts or omissions therefore 'cannot fairly be attributed to [the client].'" *Id.* at 923 (quoting *Coleman*, 501 U.S. at 753) (alteration in original).

'reasonable diligence,' not 'maximum feasible diligence.' "
*Id.* at 2565 (citations and second and third internal quotation
marks omitted). We readily conclude that extraordinary
circumstances in part gave rise to Rudin's delay in filing her
application for federal habeas relief.

### 1. *July 1, 2004, Through November 10, 2004*

Between July 1, 2004, the day the AEDPA limitation
period began to run, and November 10, 2004, the day that
Figler was appointed to represent Rudin, Rudin was not
represented by counsel. During that time, Rudin cannot
establish that "extraordinary circumstances" existed to
equitably toll the AEDPA limitation period. *See Roy v.
Lampert*, 465 F.3d 964, 970 (9th Cir. 2006) ("[P]ro se status,
on its own, is not enough to warrant equitable tolling.").
Thus, during that time, 133 non-tolled days passed on
Rudin's AEDPA clock.

### 2. *November 10, 2004, Through August 22, 2007*

On November 10, 2004, Figler was appointed to represent
Rudin in her collateral review proceedings.[16] After Figler
was appointed, however, he abandoned her. Over the course
of his period of representation, Figler visited Rudin in prison
only a handful of times, and by mid-2005, those visits had
stopped. He had a collect call block placed on his office
phone, making him all but impossible to reach. And while
we acknowledge that Figler physically attended the post-
conviction court's status hearings, the record makes clear that

---

[16] It is significant that Figler's representation commenced before June
30, 2005. That is so because extraordinary circumstances cannot toll a
statute of limitations that has already run.

he did so with seemingly no intention to actually represent his client. All the while, Figler failed to inform Rudin of the reasons for his delay, providing her no clue of "any need to protect [herself] pro se." *See Maples*, 132 S. Ct. at 917. On the record before us, it does not appear that *anyone* was aware of Rudin's need to protect herself until at least August 22, 2007. We therefore conclude that extraordinary circumstances prevented Rudin from filing her application for federal habeas relief between November 10, 2004, and August 22, 2007.

Rudin was also diligent in pursuing her rights during that time, beginning with her attempt to file pro per a petition for post-conviction relief on November 10, 2004. Over the course of Figler's representation, Rudin made repeated attempts to contact him, provided him with witness information relevant to her case, and requested that he provide her with copies of her files so that she could take additional steps on her own behalf. When Figler repeatedly failed to respond, Rudin prepared and filed her own motion to substitute counsel, which had a "brief opening supplement" attached to it. Until she filed that motion, Rudin had done everything short of filing her own "opening brief," which, as the state court had already made clear, the local rules prohibited her from doing. We conclude that Rudin was "reasonably diligent" during the period of Figler's representation, which is all that is required for equitable tolling purposes. *See Holland*, 130 S. Ct. at 2565.

Rudin is therefore entitled to equitable tolling of the AEDPA statute of limitations during the time in which Figler was representing her and up until the point at which Oram became aware that Figler had never filed anything on Rudin's

behalf. That period of time ran from November 10, 2004, to August 22, 2007.

The State argues that Rudin cannot avail herself of the benefit of equitable tolling during that time because Figler represented Rudin only in state court, not in federal court. On that point, the State contends that Figler's inadequacies in state court had no bearing on Rudin's ability to file a timely federal application for relief. It argues that, pursuant to *Pace*, Rudin should have filed a "protective" application in federal court and asked the court to stay and abey its habeas proceedings while she exhausted her state-court remedies. 544 U.S. at 416 ("A prisoner seeking state postconviction relief [may file] a 'protective' petition in federal court and as[k] the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted."). Under the specific circumstances of this case, we are not persuaded by the State's argument. *See Holland*, 130 S. Ct. at 2563 ("[S]pecific circumstances . . . could warrant special treatment in an appropriate case.").

For all Rudin knew–and, indeed, until August 22, 2007, for all the *State* knew–Rudin's state-court petition had already been filed, making her eligible for statutory tolling under § 2244(d)(2). During the period that Figler had represented her, almost every reference to the pending filing was to an "opening" or "supplemental brief," suggesting that the court had already received her initial petition. Even the State concedes that it believed that to be the case. During the period in which Rudin "lacked a clue" of any need to protect herself, we decline to impute to her knowledge that neither the State nor the court possessed. *See Lott v. Mueller*, 304 F.3d 918, 923 (9th Cir. 2002) (declining to impute to a petitioner knowledge that, "[e]ven with the benefit of legal

training, ready access to legal materials and the aid of four years of additional case law, . . . evaded both [petitioner's] appointed counsel and the expertise of a federal magistrate judge").[17]

### 3. August 23, 2007, Through April 25, 2011

On August 22, 2007, at the status conference in the state post-conviction court, the parties first became aware of the fact that Figler had never filed a post-conviction petition in state court. From that point forward, Rudin should have been aware of the possibility that nothing had been "properly filed"

---

[17] The State filed a motion in this court to expand the record on appeal to include various state-court documents that it had not, for whatever reason, made a part of the record in the district court. As a general rule, documents not filed with the district court cannot be made part of the record on appeal. *See* Fed. R. App. P. 10(a) ("[T]he original papers and exhibits filed in the district court; the transcript of proceedings, if any; and a certified copy of the docket entries prepared by the district clerk" . . . "constitute the record on appeal."); *Kirschner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988). There are of course narrow exceptions to that general rule, which we may, in our discretion and in "unusual circumstances," invoke. *Lowry v. Barnhart*, 329 F.3d 1019, 1024–25 (9th Cir. 2003) (listing exceptions).

The State offers no compelling reason for its failure to make these documents part of the record in the district court. Ironically, the reasons it offers for doing so are the same reasons to which it objected when the state post-conviction court found that Rudin had established good cause for her filing delay: that "this is not a typical case," that "Rudin's trial was one of the longest in Nevada history," and that, overall, the proceedings below were complex.

We do not need the documents that the State seeks to make part of the record on appeal in order to decide this case. Thus, we decline to depart from our general rule. The State's motion to expand the record on appeal is **DENIED.**

in either state or federal court on her behalf. And at that time, having been put on notice that her state-court petition may not have been timely filed, 28 U.S.C. § 2244(d)(2), Rudin had every reason to act diligently to protect her rights. Yet she failed to do so.

Rudin offers no persuasive reason for her failure to act diligently during that time, however. Although she could have filed a protective federal habeas application while her state-court post-conviction appeal was pending, she did not. *See Pace*, 544 U.S. at 416. After the State filed its notice of appeal in the Nevada Supreme Court, it should have been eminently clear to Rudin (and Oram, her counsel) that Rudin's eligibility for AEDPA statutory tolling was in jeopardy. Absent any compelling reason for her failure to act during this time, Rudin cannot satisfy her burden to establish that she is entitled to equitable tolling after August 22, 2007.[18]

---

[18] The dissent takes issue with our conclusion in this respect, pointing out that by the time Rudin learned that Figler had never filed a post-conviction petition on her behalf, the AEDPA limitations had already run. Therefore, the dissent argues, Rudin had nothing left to protect, and any protective application for habeas relief would have been pointless.

But our caselaw still requires that Rudin show some degree of diligence during that time. We cannot conclude that, simply because the AEDPA statute of limitations had run, Rudin needn't have filed anything in federal court. Although a district court might have "dismissed [Rudin's application] because it was untimely," Rudin would have had every right to appeal such a decision and seek relief on equitable tolling grounds. In any event, our cases do not permit us to resolve this appeal by speculating as to what might have happened had Rudin been diligent; rather, those cases required Rudin to show that she was diligent by filing something in federal court. *See White v. Martel*, 601 F.3d 882, 884–85 (9th Cir. 2010) (per curiam) (rejecting the argument that filing a protective application after the AEDPA statute of limitations had run would have been "pointless or even detrimental" and concluding that failure to file demonstrated a

\*   \*   \*   \*   \*

In sum, we conclude that Rudin has satisfied her burden to show that she is entitled to equitable tolling of the AEDPA limitations period until August 22, 2007, when the extraordinary circumstances making it impossible for her to file on time were removed.  *See Sossa*, 729 F.3d at 1229. After that date, AEDPA's one-year limitations period resumed, giving Rudin until April 10, 2008, at the latest to file her application for federal habeas relief in the district court.[19]  She waited until April 25, 2011, to do so.  We must therefore also conclude that Rudin's application was, by our calculations, over three years–or 1109 days–too late.

## III.  CONCLUSION

We are troubled by the outcome of this case for many reasons.  Margaret Rudin's direct appeal and collateral review proceedings have been pending in either state or federal court for a combined total of 13 years.  She has potentially meritorious claims that she has suffered prejudice at the hands of her own attorneys' egregious misconduct.  Yet she has never had an opportunity to present those claims in court.

Rudin's defense counsel, Amador, indisputably engaged in egregious professional misconduct during the course of her underlying criminal trial.  On direct appeal of her judgment

lack of diligence).  Unfortunately, Rudin did not.  We are therefore compelled to conclude that she is not entitled to equitable tolling of the AEDPA statute of limitations after August 22, 2007.

[19] Again, giving Rudin every benefit of the doubt, we assume that equitable tolling preserves the remaining AEDPA limitations period.

of conviction, the Nevada Supreme Court acknowledged that Rudin's trial was plagued not only with inadequacies on the part of defense counsel, but also with prosecutorial misconduct and legal error on the part of the State and the court.[20]  Although two members of the Nevada Supreme Court found the record sufficiently clear as to the "inherent prejudice created by [trial counsel]" to require immediate reversal of Rudin's judgment of conviction, a majority of the court declined to address the effect of those errors, finding them more appropriate for resolution on collateral review.

But then, in her collateral review proceedings, Rudin was abandoned.  Rudin's first attorney filed nothing in any court on her behalf, and he also failed entirely to investigate her post-conviction claims.  By the time Rudin requested and obtained substitute counsel, her state and federal limitations periods had already run, but nobody, not even the court, knew that to be true.  And although the state post-conviction court, seeing the case as a "mockery of [its] promise to people who are in the criminal justice system that they will have an adequate defense," initially granted Rudin relief, the Nevada Supreme Court reversed that court's judgment, finding Rudin's petition untimely and reinstating her criminal convictions.  Now, for reasons that completely escape us and that remain unexplained by the record, Rudin's current counsel failed to file a protective habeas application in federal

---

[20] On direct appeal, the Nevada Supreme Court noted that, at trial, the State had withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  The Nevada Supreme Court also noted that the trial court had applied the wrong legal standard when it ruled on Rudin's requests for a mistrial.  The state supreme court concluded, however, that those errors were harmless.

court to preserve Rudin's right to any opportunity for review that may have remained.

At this point, Rudin is still in prison, having served 13 years of her life sentence for murder. We know from the state post-conviction court that the State's "proof of guilt [at that trial] was not a slam dunk by any stretch of the imagination." We also know from the post-conviction court that, had Rudin been represented by competent counsel, the jury's verdict may have been different. Thus, what we do not know is whether Rudin is lawfully imprisoned. And, regrettably, that is something we may never know.

The prejudice that Rudin potentially suffered at trial has only been compounded by the inadequacies of her attorneys on collateral review, who have now precluded her from having any chance at presenting her claims in federal court. Thus, if ever there were a case in which equitable tolling should apply to soften the harsh impact of technical rules, perhaps this is that case. However, we are bound by AEDPA and the standards established under our caselaw and that of the U.S. Supreme Court, which circumscribe our power to grant relief to cases in which extraordinary circumstances–in other words, abandonment–made it impossible for the petitioner to file on time.

Applying those equitable tolling standards here, we are unable to conclude that, during the time in which Rudin was represented by her current counsel, Oram, extraordinary circumstances made it impossible for her to file a protective application for habeas relief in federal court. While we can find no explanation for Oram's conduct, we likewise cannot conclude that he abandoned her in a way that, under *Holland*, would constitute extraordinary circumstances sufficient to

equitably toll the AEDPA limitations period. For that reason, this case–this patent denial of the safeguards of our criminal justice system–calls for a remedy that we, as a circuit court, simply cannot provide.

Because that is so, we must **AFFIRM** the district court's dismissal with prejudice of Rudin's application. For the reasons explained earlier, we **DENY** the State's motion to expand the record on appeal.

---

ADELMAN, District Judge, dissenting:

No one can seriously dispute that Margaret Rudin received ineffective assistance of counsel during her state court homicide trial, reportedly the longest such trial in Nevada history. Although two justices of the Nevada Supreme Court were prepared to grant relief based on the record on direct appeal, a majority directed her to follow the usual procedure of developing her ineffective assistance claim by bringing a post-conviction motion. Rudin attempted to do so but, based on a constellation of circumstances none of which are fairly attributable to her lack of diligence, she was prevented both from properly filing a post-conviction motion and from timely filing a federal habeas corpus petition.

The majority finds unfairness but concludes that our hands are tied. I disagree with the latter proposition and conclude that, on the egregious facts of this case, the doctrine of equitable tolling is sufficiently expansive to provide petitioner with access to the federal courts. Thus, I respectfully dissent.

## I.

Regarding the facts, I emphasize only a few key points. Rudin attempted to comply with the state supreme court's directive to present her ineffective assistance claim via a post-conviction motion both by requesting the appointment of post-conviction counsel and by attempting to file papers which, according to her, raised the claim. In November 2004, in response to Rudin's request, the trial court appointed Dayvid Figler as post-conviction counsel but declined to accept Rudin's pro se submission and instead gave it to Figler. Figler did not file Rudin's papers and, for almost two years, did nothing except seek continuances. Justifiably fed up, Rudin ultimately asked for and was provided new counsel. By that time, however, both the state post-conviction motion deadline and the federal habeas statute of limitations had run.

In August 2007, Rudin's new lawyer Christopher Oram filed a brief in support of state post-conviction relief and realized that no post-conviction motion had previously been filed. He apprised the post-conviction court of this, and the court found that because of the case's extraordinary circumstances, including the length and complexity of the trial and Figler's misconduct, the delay in filing was justified. The state's counsel complained that the court's ruling set "a bad precedent" and asked permission to file a brief on the timeliness issue. The post-conviction court granted the request, but the state then failed to file such a brief and instead chose to contest the merits of Rudin's claim. In December 2008, the post-conviction court granted Rudin relief on her ineffective assistance claim.

The state appealed to the state supreme court and, notwithstanding having forgone the timeliness issue in the post-conviction court, argued that Rudin's post-conviction motion was untimely. Remarkably, in view of the state's previous failure to contest the issue, the state supreme court ruled that the post-conviction court had failed to make a sufficient finding of cause for its timeliness ruling. The court also refused to remand the case to enable Rudin to make a record on the issue.  On January 20, 2011, the state supreme court concluded its consideration of the case when it  denied en banc review over a dissent which memorably noted, "If this is justice then I must be dreaming." On April 25, 2011, Rudin filed her federal habeas petition.

## II.

A petitioner is entitled to equitable tolling if she shows that she has been pursuing her rights diligently and some extraordinary circumstance stood in her way.  *Pace v. DiGuglialmo*, 544 U.S. 408, 418 (2005).  The diligence required for equitable tolling purposes is "reasonable diligence," not "maximum feasible diligence."  *Ford v. Gonzalez*, 683 F.3d 1230, 1237 (9th Cir. 2012).  While the threshold necessary to trigger equitable tolling is high, lest the exceptions swallow the rule, *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009), the grounds for granting equitable tolling are highly fact-dependent, *Nedds v. Calderon*, 678 F.3d 777, 780 (9th Cir. 2012).

When considering whether to apply equitable tolling, the Supreme Court has emphasized the need for flexibility and for avoiding mechanical rules. *Holland v. Florida*, 560 U.S. 631, 650 (2010).  A court reviewing a habeas petition should adhere to a tradition in which courts of equity have sought to

relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, and which, if strictly applied, threaten the evils of archaic rigidity. *Id.*; *see also Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008) ("We have stated that the purpose of the equitable tolling doctrine 'is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court.'") (quoting *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004)).

Rudin presents a compelling case for equitable tolling. She consistently sought to press her ineffective assistance claim in the state courts, as she was required to do before turning to the federal courts, yet due to impediments created by others she was prevented from obtaining review on the merits. She attempted to file a pro se submission challenging the effectiveness of her trial counsel, but the post-conviction court turned it over to Figler. Had the court accepted Rudin's filing, statutory tolling would likely have applied throughout the state post-conviction process.

As the majority recognizes, Figler then abandoned Rudin. *See, e.g.*, *Holland*, 560 U.S. at 651 (holding that unprofessional attorney conduct, if sufficiently egregious, may constitute an extraordinary circumstance justifying equitable tolling); *Spitsyn v. Moore*, 345 F.3d 796, 801 (9th Cir. 2003) ("We similarly conclude that the misconduct of Spitsyn's attorney was sufficiently egregious to justify equitable tolling of the one-year limitations period under AEDPA."). And when Rudin realized that Figler was doing nothing, she again demonstrated due diligence by asking the post-conviction court to replace him.

The state suggests that, notwithstanding Figler's misconduct, Rudin could have filed a protective petition in federal court. But Rudin had no reason to know that a post-conviction motion had not been docketed during the one year limitation period set by state law such that she could not avail herself of statutory tolling. Reasonable diligence did not require her to file a protective federal petition based on the possibility that the state post-conviction court would without informing her refuse to file her pro se submission and that her court-appointed lawyer would never file a post-conviction motion in state court. As we stated in *Harris*, the fact that a prisoner "*could* have filed a timely federal habeas petition at a certain point in time is not dispositive." 515 F.3d at 1055.

I part ways with the majority when it concludes that in August 2007, after Rudin's new lawyer advised the post-conviction court that no state post-conviction motion had been filed, Rudin failed to exercise reasonable diligence by not filing a protective federal habeas petition. The facts do not justify this conclusion. First, by August 2007 the federal habeas statute of limitations had long since run. It would have been pointless for Rudin to file a "protective" habeas petition pursuant to *Pace* because, unlike in *Pace*, there was nothing to protect. In *Pace*, the prisoner could have filed a protective habeas petition before the federal habeas statute of limitations had run and thus had a timely habeas petition on file. In the present case, any protective petition that Rudin might have filed in 2007 would have been untimely and would not have protected anything. In all likelihood, it would have been dismissed because it was untimely. *See, e.g.*, *Urrizaga v. Attorney General for Idaho*, No. CV-07-434, 2008 WL 1701735, at *3 (D. Idaho Apr. 9, 2008) (dismissing as untimely a petition that the prisoner apparently intended to

function as protective because by the time he filed it the statute of limitations had already expired).

The second reason that Rudin had no reason to file a protective habeas petition based on the proceedings in the post-conviction court is that the state provided her with good cause to believe that it had given up on the timeliness issue. As discussed, at the August 2007 hearing, the post-conviction court found that, because of the extraordinary circumstances of the case, the post-conviction submission by Rudin's new lawyer was timely. The state asked for and received permission from the court to contest the timeliness issue but then chose not to do so. The state essentially sandbagged Rudin, lulling her into believing that it was not contesting the post-conviction court's conclusion that she had properly filed a post-conviction motion which tolled the federal clock. *See Maghee v. Ault*, 410 F.3d 473, 476 (8th Cir. 2005) ("Equitable tolling is appropriate . . . where a defendant's conduct lulls the prisoner into inaction."). The state's failure to raise the timeliness issue in the post-conviction court certainly provided Rudin with a reasonable basis to believe that she had no need to file a protective petition in federal court; she was entitled to rely in good faith on the state's position. *Cf. Harris*, 515 F.3d at 1055 (finding equitable tolling where the petitioner relied in good faith on then-binding circuit precedent).

The majority attempts to buttress its contention that Rudin should have filed a protective petition by citing the state's challenge to the timeliness of her post-conviction motion in the state supreme court after the post-conviction court had granted her relief in December 2008. Surely by this time, the majority concludes, Rudin should have known that her eligibility for statutory tolling was in jeopardy. But

reasonable diligence did not require Rudin to file a protective federal petition while the state appealed her victory. First, as stated, the federal statute of limitations had long since run, making a protective petition pointless. Second, a litigant in Rudin's position could have reasonably concluded that the state had waived or forfeited its right to contest the timeliness issue by not having done so in the post-conviction court. Finally, at that point in the proceedings, Rudin had *prevailed*. She had no reason to file a protective petition because she had no claim to raise. She had won and, as a result, there was no adverse decision for the federal courts to review. To conclude that she is not entitled to equitable tolling because she failed to file a protective petition after she had won her case in state court seems extremely unfair.

And after she lost in the state supreme court in 2011, she promptly filed in federal court.[1]

---

[1] The majority cites *White v. Martel*, 601 F.3d 882, 884–85 (9th Cir. 2010) (per curiam), for the proposition that a prisoner must file a protective petition to show reasonable diligence even though the AEDPA limitations period has already run. In *White*, however, the prisoner's state court petition was held untimely on January 6, 2006, but the prisoner had until January 12, 2006 to timely file a federal habeas petition. *See id.* at 884; *White v. Subia*, No. 2:06-cv-02840, 2008 WL 2302534, at *2 (E.D. Cal. May 30, 2008). *White* turned on the fact that the prisoner waited until December 14, 2006, nearly a year after his state court motion was rejected, to file in federal court.

The facts of the present case are not comparable. Here, on August 22, 2007 (about two years after the federal statute of limitations had run), the parties first discovered that no state post-conviction motion had been filed. On that same date, the post-conviction court accepted Rudin's supporting brief as a proper motion, a determination the state failed to challenge until after it lost on the merits. As discussed in the text, reasonable diligence did not require Rudin to file a protective petition while the state, having forfeited a timeliness challenge, appealed her victory.

## III.

Commentators have noted that modern habeas corpus law requires prisoners to run a procedural gauntlet before they can even get their cases in front of an article III judge for review of the merits. *See* John H. Blume, et al., *In Defense of Non-Capital Habeas: A Response to Hoffmann and King*, 96 Cornell L. Rev. 435, 442–43 (2011). Nevertheless, both the Supreme Court and the Ninth Circuit have recognized that equitable doctrines remain available to soften the harsh impact of technical rules that prevent a good faith litigant from having her day in court. If ever there was a case in which the deadlines need to be relaxed to avoid a miscarriage of justice, this is it.